UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEAN-PAUL BOROWIEC, | No. 2:23-cv-2173-SCR |
| Plaintiff, | |
| v. | ORDER AND |
| JONES, et al., | FINDINGS AND RECOMMENDATIONS |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983. This case is proceeding on an Eighth Amendment failure to protect claim against defendant Jones as alleged in plaintiff's first amended complaint. See ECF Nos. 8, 9 (screening order). Currently pending before the court is defendant's motion to dismiss on the grounds that plaintiff has failed to state a claim upon which relief can be granted and because defendant is entitled to qualified immunity. For the reasons explained in further detail below, it is recommended that defendant's motion to dismiss be denied.

**I.    Factual and Procedural Background**

Plaintiff filed a first amended complaint on May 28, 2024. ECF No. 8. By way of background, the amended complaint indicates that Mule Creek State Prison ("MCSP") was previously designated as a sensitive needs yard or "SNY" facility. ECF No. 8 at 2. Plaintiff describes sensitive needs inmates, like himself, as those who are "vulnerable like the sick,

1

elderlies [sic], ex-cops, gang dropouts, child molesters, rapists, and similar…" individuals with "objectionable convictions…." ECF No. 8 at 2-3. In 2018, MCSP changed to a non-designated programming facility that requires both sensitive needs inmates and "mainline prisoners" to be housed together. ECF No. 8 at 4. During a townhall meeting with inmates and MCSP officials to discuss this change, plaintiff heard defendant Jones, a MCSP correctional officer, commenting that he "hope[d] ya'll kill each other!" ECF No. 8 at 5. Defendant Jones knew of violent acts being committed against sensitive needs inmates who were being escorted with mainline inmates because he was either directly involved in the escort or because he responded to these attacks on the E-yard. ECF No. 8 at 3-4.

On August 19, 2022, plaintiff was being transported in a van with other ill and elderly inmates from the medical clinic back to their housing unit by defendant Jones. ECF No. 8 at 9. Along the way, the van stopped at the Receiving and Release Department to pick up a mainline inmate who had just arrived at MCSP. ECF No. 8 at 9-10. During this transport, plaintiff heard defendant Jones tell his partner that the mainline inmate had refused to program and was placed in administrative segregation the night before. Id. at 15. When all the inmates exited the van after arriving on the E-yard, their handcuffs were removed. Id. at 11. Plaintiff turned to assist another inmate in a wheelchair and was punched in the right jaw by the mainline inmate. Id. at 11. Plaintiff lost his balance and stumbled, but quickly recovered because the mainline inmate began chasing him around the yard. Id. at 12. Plaintiff only stopped running when the mainline inmate stopped pursuing him. Id. This start and stop pursuit of plaintiff occurred a total of four times before the mainline inmate gave up and laid down on the ground. Id. At that point, defendant Jones finally activated his personal alarm. Id.

After plaintiff was attacked by the mainliner, he asked defendant why he told another African-American inmate to "step away" before the mainline inmate's handcuffs were removed, but he did not similarly warn plaintiff to do so. ECF No. 8 at 2. Defendant Jones responded that plaintiff "just got to fend for" himself. Id. Based on these allegations, the court found service of the amended complaint appropriate based on defendant Jones' disregard of "an excessive risk to [plaintiff's] health when he removed the mainline inmate's handcuffs." ECF No. 9 at 3.

On November 21, 2024, defendant filed a motion to dismiss the amended complaint, asserting that plaintiff failed to state an Eighth Amendment claim for relief and that defendant Jones is entitled to qualified immunity. ECF No. 19. According to defendant, the amended complaint "makes clear that [p]laintiff heard both Officer Jones's statements about the attacker-inmate during the transport and Officer Jones's statement to another inmate outside of the transport van to step away." ECF No. 19 at 7. However, neither one of these statements indicate any awareness of a specific risk to plaintiff from the other inmate. Since the other inmate attacked plaintiff as soon as his handcuffs were removed, defendant Jones further argues that he did not have sufficient time to prevent the attack. ECF No. 19 at 8. At most, plaintiff's allegations indicate that defendant Jones was negligent, which insufficient for Eighth Amendment liability. Id. Finally, defendant contends that he is entitled to qualified immunity because he did not violate any clearly established constitutional right that "mandate[d] individualized warnings to potential victims of inmate attacks…." ECF No. 19 at 12. Defendant asserts that granting plaintiff further leave to amend his complaint would be futile. Id. For all these reasons, defendant requests that the amended complaint be dismissed without leave to amend. ECF No. 19.

Plaintiff filed an opposition to the motion to dismiss, asserting that the court properly found that he stated an Eighth Amendment claim in his amended complaint. ECF No. 20. Plaintiff further indicates that defendant Jones "who is [B]lack, only warned a [B]lack inmate to step away from the mainliner, but he did not warn [p]laintiff or told [p]laintiff to step away. This shows Jones knew the risk of harm but did not care to ensure [p]laintiff's safety because [p]laintiff is not Black." ECF No. 20 at 1. Furthermore, defendant Jones stood by watching as the mainliner punched and then chased plaintiff "in hope that the mainliner [would] catch up to [p]laintiff as evidenced by Jones' earlier statement… that he hoped that 'you will all kill each other.'" ECF No. 20 at 2. As a result, defendant's motion to dismiss should be denied.

In his reply, defendant Jones points out that plaintiff's amended complaint does not indicate that he warned another inmate to back away from the mainliner inmate who attacked

1  plaintiff. ECF No. 21 at 2. Instead, the amended complaint states that defendant Jones told
2  another inmate to "step away" without indicating that there was a risk from the mainliner. ECF
3  No. 21 at 2. "This difference is material because the latter statement… does not suggest any
4  knowledge of a specific risk on the part of Officer Jones." Id. Additionally, plaintiff does not
5  identify what more defendant Jones could have done. ECF No. 21 at 2-3. "[I]f Officer Jones
6  allegedly wanted all inmates to harm one another, then logically he would not have warned any
7  one inmate about a potential attack." ECF No. 21 at 3. Defendant's assertion of qualified
8  immunity is not addressed at all in plaintiff's opposition. ECF No. 21 at 3-4.

9  **II.  Legal Standards**
10 **A. Motion to Dismiss Standards**
11 In order to survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a
12 complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it
13 must contain factual allegations sufficient to "raise a right to relief above the speculative level."
14 Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). "The pleading must contain something
15 more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of
16 action." Id., quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-
17 236 (3d ed. 2004). "[A] complaint must contain sufficient factual matter, accepted as true, to
18 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
19 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads
20 factual content that allows the court to draw the reasonable inference that the defendant is liable
21 for the misconduct alleged." Id.
22 In considering a motion to dismiss, the court must accept as true the allegations of the
23 complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976),
24 construe the pleading in the light most favorable to the party opposing the motion, and resolve all
25 doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, the
26 court need not accept legal conclusions "cast in the form of factual allegations." Western Mining
27 Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Moreover, pro se pleadings are held to a less
28 ////

stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

### B. Eighth Amendment Failure to Protect Standards

Under the Eighth Amendment, "prison officials have a duty to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (internal quotation marks, ellipsis, and citation omitted). However, "not . . . every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. A prison official may be held liable for an assault suffered by one inmate at the hands of another only where the assaulted inmate can show that the injury is sufficiently serious, and that the prison official was deliberately indifferent to the risk of harm. Id. at 834, 837. Thus, the relevant inquiry is whether prison officials, "acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." Id. at 834 (internal quotation omitted). To be deliberately indifferent, the "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id. at 842 (citations omitted).

### C. Legal Standards for Qualified Immunity

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The objective of the qualified immunity doctrine is to ensure "that 'insubstantial claims' against government officials be resolved prior to discovery and on summary judgment if possible." Anderson v. Creighton, 483 U.S. 635, 640 n. 23, (1987) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818–19 (1982)).

Government officials are entitled to qualified immunity when their "conduct does not

5

1 violate clearly established statutory or constitutional rights of which a reasonable person would
2 have known." Harlow, 457 U.S. at 818; see also Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir.
3 2001). In analyzing a qualified immunity defense, the court must determine: (1) whether the
4 alleged facts, taken in the light most favorable to the plaintiff, demonstrate that defendant's
5 conduct violated a statutory or constitutional right; and (2) whether the right at issue was clearly
6 established at the time of the incident. Saucier v. Katz, 533 U.S. 194, 201 (2001). "[I]f the
7 answer to either [question] is 'no,' then the state actor cannot be held liable for damages."
8 Gordon v. County of Orange, 6 F.4th 961, 968 (9th Cir. 2021) (citation omitted).

### III. Analysis

Taking the allegations in the complaint as true and drawing all inferences in plaintiff's favor, the court concludes that the amended complaint sufficiently alleges that defendant Jones was subjectively aware of a risk to plaintiff's safety as a sensitive needs inmate. Plaintiff identifies four separate actions that defendant Jones could have taken to abate the risk of harm to plaintiff from the mainline inmate. First, defendant could have allowed the sensitive needs inmates, including plaintiff, to walk to their housing units before removing the mainline inmate's handcuffs. Id. at 3. This action would have prevented any attack on plaintiff. Second, defendant Jones could have actively pursued the mainliner after he started chasing plaintiff. ECF No. 8 at 12. Third, defendant Jones could have ordered the mainline inmate to stop his pursuit of plaintiff. ECF No. 8 at 5. Finally, defendant could have activated his personal alarm at the outset of the attack on plaintiff rather than waiting to do so until the mainline inmate voluntarily decided to stop his pursuit and go to the ground. ECF No. 8 at 12. With all of these options available to him, defendant's argument that he could not have done anything more to protect plaintiff from harm is unavailing. Compare Rademaker v. Ganzekaufer, 2022 WL 4591799 at *4 (S.D. Cal. Sept. 28, 2022) (granting motion to dismiss for failure to state a claim because plaintiff did not "plausibly allege what more Dr. Ganzekaufer could or should have done to fulfill his requirement to 'take reasonable measures to guarantee the safety of the inmates….'"). Defendant's failure to perform any of these actions is not merely negligent as defendant suggests in his motion to dismiss. Rather, defendant Jones' failure to respond at all to the attack by the mainline inmate on

plaintiff is consistent with his alleged statements that plaintiff had to fend for himself. While perhaps a close case, plaintiff has plausibly stated an Eighth Amendment failure to protect claim. See Iqbal, 556 U.S. at 678 (emphasizing that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.") (citation omitted).

When qualified immunity is raised in a motion to dismiss, a court must determine "whether the facts alleged in the complaint, assumed to be true, yield the conclusion that the defendant is entitled to immunity." Butler v. San Diego District Attorney's Office, 370 F.3d 956, 963-64 (9th Cir. 2004). Under the first prong of qualified immunity analysis, the court is unable to conclude at this stage, that defendant Jones did not violate plaintiff's Eight Amendment rights for the reasons explained above. Moreover, a prisoner's basic Eighth Amendment right to be free from violence at the hands of other inmates has been long established. See Farmer, 511 U.S. at 833. Although defendant submits that the more specific right to receive a verbal warning of potential violence from a prison official was not clearly established at the time of this incident, the amended complaint does not solely predicate defendant Jones' liability on his absence of a warning to plaintiff.[1] The amended complaint alleges that defendant Jones failed to protect plaintiff, who was a sensitive needs inmate, from violence at the hands of a mainline inmate. At the time of the incident, the law clearly established the duty to prison officials to protect such inmates who have subjective characteristics that make them vulnerable. See, e.g., Farmer, 511 U.S. at 848 (failure to protect "transsexual" with a "feminine appearance"); Harris v. Atchley, No. 22-cv-00529-EMC, 2023 WL 4850176 at *6 (N.D. Cal. July 29, 2023) ("[T]he Ninth Circuit repeatedly has recognized that sex offenders are at risk of being attacked by general population prisoners.") (collecting cases). Defendant is not entitled to qualified immunity at this juncture. Accordingly, the undersigned recommends denying the motion to dismiss on qualified immunity grounds.

---

[1] The Ninth Circuit has emphasized that the constitutional right at issue "should be defined in a way that is neither 'too general' nor 'too particularized.'" Gordon v. County of Orange, 6 F.4th 961, 969 (9th Cir. 2021) (quoting LSO, Ltd. V. Stroh, 205 F.3d 1126, 1158 (9th Cir. 2000)).

### IV. Conclusion

IT IS HEREBY ORDERED that the Clerk of Court randomly assign this matter to a district judge.

IT IS FURTHER RECOMMENDED that:

1. Defendant's motion to dismiss (ECF No. 19) be denied.

2. Defendant Jones be ordered to file an answer to the first amended complaint within 30 days.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 3, 2025

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE